UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IBEX Engineering Services, Inc.,
        Plaintiff,

v.

Honeywell Technology Solutions, Inc.,
        Defendant.

Civil Action No.

05 C 11126 MEL

## COMPLAINT

### Introduction.

1. This is an action for promissory estoppel, negligent misrepresentation, fraudulent misrepresentation, unjust enrichment and breach of the implied covenant of good faith and fair dealing under the common law of the Commonwealth of Massachusetts and for a violation of M.G.L. c. 93A, § 11. Plaintiff entered into a contract with defendant to provide engineers to work on the "Big Dig" construction project in Boston, Massachusetts under the direction of defendant. Defendant represented that the engineers would be assigned work that would allow the engineers to be classified by plaintiff as exempt employees under the Fair Labor Standards Act and therefore not entitled to overtime wages. An investigation conducted by the U.S. Department of Labor ("DOL"), apparently triggered by a prior investigation of overtime worked by other subcontractors hired by defendant on the Big Dig project, however, revealed that defendant assigned most of plaintiff's engineers non-exempt work and had them work a substantial amount of overtime. As a result, plaintiff was forced to pay additional overtime compensation to its engineers in the amount of $116,500.00 and also incurred additional payroll taxes, legal fees and other expenses associated with the DOL investigation, which brought the total cost to plaintiff of defendant's assignment of non-exempt work to the engineers to

$164,236.02. In April 2004, plaintiff began billing defendant at 1.5 the straight-time rate for all overtime worked by its employees from that point on and defendant agreed to and has paid this increased rate. Defendant has failed and refused to reimburse plaintiff for the overtime expenses and costs associated with the DOL investigation. In this action, plaintiff is seeking to recover that amount ($164,236.02) plus exemplary damages and attorneys' fees under M.G.L. c. 93A.

**Parties.**

2.   Plaintiff IBEX Engineering Services, Inc. ("IBEX") is a Florida corporation with its principal offices located at 1113 S.W. Martin Downs Boulevard, Palm City, Florida 34990.

3.   On information and belief, defendant Honeywell Technology Solutions, Inc. ("HTSI") is a Delaware corporation with its principal offices located at 7000 Columbia Gateway Drive, Columbia, Maryland 21046 and is registered to do business, and regularly conducts business, in the Commonwealth of Massachusetts.

**Jurisdiction and Venue.**

4.   This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

5.   This Court has personal jurisdiction over HTSI pursuant to the long-arm statute of the Commonwealth of Massachusetts, including G.L. c. 223A, § 3 pertaining to the transacting of business or causing of any injury within this state.

6.   Venue is proper under 28 U.S.C. § 1391, including without limitation 28 U.S.C. § 1391(a).

**Factual Allegations.**

7.  On or about March 2002, IBEX entered into a contract with HTSI in which it agreed to provide engineering support to HTSI on the Central Artery/Tunnel Project in Boston, Massachusetts (the "Big Dig project"), under the direction and control of HTSI.

8.  During the preceding contract negotiations between IBEX and HTSI, George Gram, a Program Director with HTSI, stated to William Derrickson, IBEX's CEO, that the work to be assigned by HTSI to IBEX's employees on the project would allow IBEX to classify those employees as "exempt" under the federal Fair Labor Standards Act ("FLSA"). Mr. Gram specifically informed Mr. Derrickson that the nature of the work to be assigned to IBEX employees in the Big Dig project would require IBEX to assign only qualified professional employees to the project.

9.  In addition to these statements made by Mr. Gram, HTSI provided IBEX with written qualification specifications via e-mail in or around February 2002 setting forth the kind of work that purportedly would be assigned to the employees that IBEX would hire for the Big Dig project. The description of the work to be performed by IBEX's employees contained in this e-mail was consistent with Mr. Gram's representations that the employees properly could be classified as exempt under the FLSA.

10. IBEX consequently formulated its bid for work on the Big Dig project based on HTSI's representations that the IBEX's employees would be assigned work commensurate with their status as exempt employees under the FLSA.

11. In calculating the price that it quoted to HTSI for the project, IBEX factored in the anticipated labor costs for highly-qualified, professional employees, but did not incorporate the

costs that would be incurred if these employees were entitled to time-and-a-half overtime rates for hours worked over forty in a week.

12. After HTSI procured IBEX's services, IBEX hired professional employees for the Big Dig project to meet the job requirements communicated by HTSI. IBEX assigned employees to the project only after a thorough vetting and interview process was conducted by HTSI representatives to ensure that each candidate's professional qualifications, experience history and understanding of the work to be performed met HTSI's expectations. IBEX treated these employees as exempt employees and paid them straight time instead of time-and-a-half rates for hours worked over forty in a week.

13. IBEX employees working on the Big Dig project were subject to the direction and control of HTSI at all times. HTSI assigned work to the IBEX employees and supervised the completion of that work. Twice monthly, IBEX would receive at its offices in Florida completed time sheets showing the number of hours worked by each of its employees on the Big Dig project during that period, and IBEX would process its payroll based on those timesheets.

14. Although IBEX had initially assigned a project supervisor, Gil Boissy, to the Big Dig project, Mr. Boissy left the job in or around November 2002 and was never replaced, leaving IBEX's employees at the sole direction and control of HTSI. After November 2002, overtime hours assigned to IBEX employees increased substantially.

15. In or around October 2003, the U.S. Department of Labor ("DOL") began investigating the issue of whether overtime compensation was owed to IBEX employees who were working or had worked on the Big Dig project. On information and belief, the DOL initiated this investigation of IBEX after it concluded that employees of other HTSI subcontractor(s) on the Big Dig project had been improperly classified as exempt under the

FLSA when in fact the actual duties performed by these employees did not qualify them for any FLSA exemption.

16. The DOL found that HTSI, contrary to its prior representations to IBEX, had assigned work to virtually all of IBEX's employees that disqualified them from any FLSA exemption. In addition, HTSI had scheduled IBEX's employees to work substantial overtime hours on the Big Dig project. Consequently, the DOL concluded that most of IBEX's employees were entitled to overtime pay for hours worked on the Big Dig project.

17. In or around April 2004, IBEX began billing HTSI at 1.5 the straight-time rate for all overtime worked by its employees from that point on. HTSI has paid this increased rate without objection.

18. After lengthy negotiations, IBEX agreed to the entry of a consent judgment with the DOL and agreed to pay its employees $116,500 in back overtime wages for the period covering June 1, 2002 through September 15, 2003. In addition to this expense for back overtime wages, IBEX has incurred costs such as payroll taxes, legal fees and general and administrative costs in resolving this matter with the DOL.

## COUNT I
### (Promissory Estoppel)

19. IBEX realleges and incorporates the allegations contained in paragraphs 1 through 18 of this Complaint.

20. HTSI represented to IBEX, in order to induce IBEX to bid on its project, that HTSI would assign to IBEX's employees work that would permit IBEX to classify those employees as exempt under the FLSA. HTSI further represented to IBEX that the nature of the work would require IBEX to assign only qualified engineering professionals to the project.

21. IBEX reasonably relied on these representations by: (a) deciding to place a bid for the contract with HTSI; (b) calculating its bid on the contract without including the additional labor costs that would be incurred if its employees were entitled to overtime pay at time-and-a-half rates; (c) entering into a contract with HTSI at the quoted price; and (d) paying its employees straight-time rates instead of time-and-a-half rates for overtime hours worked.

22. As a direct and proximate result of its reliance on the representations made by HTSI, IBEX has suffered substantial monetary damages in an amount to be determined at trial.

## COUNT II
### (Negligent Misrepresentation)

23. IBEX realleges and incorporates the allegations contained in paragraphs 1 through 22 of this Complaint.

24. HTSI, in the course of its business, supplied false and misleading information about the nature of the work it would assign to IBEX's employees on the Big Dig project.

25. IBEX relied upon this false information by (a) deciding to place a bid for the contract with HTSI; (b) calculating its bid on the contract without including the additional labor costs that would be incurred if its employees were entitled to overtime pay at time-and-a-half rates; (c) entering into a contract with HTSI at the quoted price; and (d) paying its employees straight-time rates instead of time-and-a-half rates for overtime hours worked.

26. IBEX reliance on this false and misleading information caused it to suffer pecuniary loss.

27. IBEX's reliance upon this false and misleading information was justifiable, as IBEX had no other reason or cause to act differently.

28. HTSI failed to exercise reasonable care or competence in obtaining or communicating the information to IBEX about the nature of the work IBEX's employees would be performing so as to make them exempt from federal overtime laws.

29. As a direct and proximate result of the HTSI's negligent misrepresentation, IBEX has suffered substantial monetary damages in an amount to be determined at trial.

## COUNT III
### (Fraudulent Misrepresentation)

30. IBEX realleges and incorporates the allegations contained in paragraphs 1 through 29 of this Complaint.

31. HTSI knowingly made false and misleading statements of material fact, and omitted to state material facts necessary to make the statements not misleading, including statements that, among other things, (a) HTSI would assign to IBEX's employees work that would permit IBEX to classify those employees as exempt under the FLSA; and (b) that the nature of the work assigned would require IBEX to hire only qualified engineering professionals for the project.

32. This information was false because HTSI, contrary to its representation, in fact assigned work to virtually all of IBEX's employees that disqualified them from any FLSA exemption.

33. HTSI knew that the information provided and statements made to IBEX were false and misleading, and intended that IBEX would rely to its detriment on such misrepresentations or omissions, or, in the alternative, recklessly disregarded the truth or falsity or misleading nature of the information provided and statements made to IBEX.

34. IBEX reasonably relied to its detriment upon and was, in fact, deceived by HTSI's false and misleading statements and omissions.

35. As a direct result of HTSI's false and misleading statements and omissions, IBEX, among other things, (a) placed a bid for the contract with HTSI; (b) calculated its bid on the contract without including the additional labor costs that would be incurred if its employees were entitled to overtime pay at time-and-a-half rates; (c) entered into a contract with HTSI at the quoted price; and (d) paid its employees straight-time rates instead of time-and-a-half rates for overtime hours worked.

36. As a direct and proximate result of HTSI's false and misleading statements and omissions, IBEX has suffered substantial monetary damages in an amount to be determined at trial.

## COUNT IV
### (Breach of Implied Covenant of Good Fair and Fair Dealing)

37. IBEX realleges and incorporates the allegations contained in paragraphs 1 through 36 of this Complaint.

38. The contract between HTSI and IBEX contained an implied covenant of good faith and fair dealing.

39. HTSI has breached this implied covenant of good faith and fair dealing by assigning IBEX's employees work that entitled them to time-and-a-half pay for overtime under the FLSA, while knowing that these employees had been hired as exempt employees.

40. As a direct and proximate result of HTSI's breach, IBEX's right to enjoy the benefit of the contract has been impaired and IBEX has suffered significant damages, as IBEX has had to pay its employees back overtime pay for services they performed pursuant to the contract.

## COUNT V
### (Unjust Enrichment)

41.  IBEX realleges and incorporates the allegations contained in paragraphs 1 through 40 of this Complaint.

42.  From approximately June 1, 2002 through September 15, 2003, IBEX provided to HTSI, and HTSI accepted, overtime labor at a straight-time rate that HTSI knew or should have known was much less than what was owed to IBEX's employees under the FLSA.

43.  HTSI knew or should have known of the benefit that it received because HTSI had negligently or fraudulently misrepresented to IBEX that it would assign to IBEX's employees work that would permit IBEX to classify those employees as exempt under the FLSA, and then assigned these employees work that entitled them to time-and-a-half pay for overtime under the FLSA.

44.  HTSI has been unjustly enriched insofar as it has benefited from its negligent or fraudulent misrepresentation which resulted in IBEX's agreement to a contract price for labor that did not compensate IBEX's employees at the rate required by the FLSA, and IBEX's significant loss in having to pay its employees back overtime pay, as well as other administrative and legal costs. HTSI's economic benefit consists of the profits that were made at the direct, wrongful, and inequitable expense of IBEX.

45.  Unless HTSI is required to reimburse IBEX for the cost of the back overtime pay owed to IBEX's employees, HTSI will be unjustly enriched at IBEX's expense.

## COUNT VI
### (Violation of M.G.L. c. 93A)

46.  IBEX realleges and incorporates the allegations contained in paragraphs 1 through 45 of this Complaint.

47. At all times relevant to this Complaint, IBEX was a "person" engaged in "trade" or "commerce" in the Commonwealth of Massachusetts within the meaning of M.G.L. c. 93A, §§ 1 and 11.

48. At all times relevant to this Complaint, HTSI was a "person" engaged in "trade" or "commerce" in the Commonwealth of Massachusetts within the meaning of M.G.L. c. 93A, §§ 1 and 11.

49. HTSI has engaged in unfair and deceptive trade practices in. violation of M.G.L. c. 93A in that, among other things, HTSI represented to IBEX that IBEX's employees would be assigned work in such a way as to preserve their exempt status under the FLSA, but HTSI in fact assigned work to virtually all of IBEX's employees that disqualified them from any FLSA exemption. This conduct, among other illegal, deceptive and unfair conduct, was orchestrated and controlled by HTSI primarily and substantially in Massachusetts, and constitutes unfair and deceptive business practices, and knowing and willful violations of M.G.L. c. 93A, § 11.

50. As a direct and proximate result of HTSI's violations of M.G.L. c. 93A, IBEX has suffered substantial monetary damages in an amount to be determined at trial.

51. IBEX is entitled to recover treble damages and its reasonable attorney's fees and costs in this action pursuant to M.G.L. c. 93A.

### Prayer for Relief.

WHEREFORE, IBEX requests that the Court:

1. Award to IBEX damages in an amount which will compensate IBEX for the damages it has suffered as a result of HTSI's wrongful conduct, together with pre-judgment interest;

2. Award to IBEX treble damages and attorneys' fees pursuant to M.G.L. c. 93A;

3. Award to IBEX its costs, expenses and disbursements in this action; and

4. Award to IBEX such other relief as is just and proper.

## DEMAND FOR JURY TRIAL

IBEX demands a jury trial on all issues so triable.

                            IBEX ENGINEERING SERVICES, INC.

                            By its attorneys,

                            Joseph F. Hardcastle (BBO# 559479)
                            Cintra S. Shober (BBO # 560120)
                            HARDCASTLE & SHOBER
                            50 Congress Street, Suite 314
                            Boston, MA  02109
                            (617) 248-2240

May 31, 2005